**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**CASE NO.: 1:19-cv-02496-WJM-STV**

ALEXANDER BAYONNE STROSS,

    Plaintiff,

v.

PREMIUM SOURCE INC.,

    Defendant.

## **OPPOSITION TO MOTION TO ENFORCE SETTLEMENT**

ALEXANDER BAYONNE STROSS, ("Stross") by and through undersigned counsel, opposes the Motion to Enforce Settlement filed by defendant PREMIUM SOURCE, INC. ("PMI"), and states as follows:

Stross was previously represented by Richard Liebowitz.[1] During that time Mr. Liebowitz agreed to a settlement of this case without Stross' authority or consent. As soon as

---

[1] The Honorable Jesse M. Furman of the Southern District of New York described Liebowitz thusly:

> Richard Liebowitz, who passed the bar in 2015, started filing copyright cases in this District in 2017. Since that time, he has filed more cases in this District than any other lawyer: at last count, about 1,280; he has filed approximately the same number in other districts. In that same period, he has earned another dubious distinction: He has become one of the most frequently sanctioned lawyers, if not the most frequently sanctioned lawyer, in the District. Judges in this District and elsewhere have spent untold hours addressing Mr. Liebowitz's misconduct, which includes repeated violations of court orders and outright dishonesty, sometimes under oath. He has been called "a copyright troll," *McDermott v. Monday Monday, LLC,* No. 17-CV-9230 (DLC), 2018 WL 5312903, at *2, 2018 U.S. Dist. LEXIS 184049, at *9-10 (S.D.N.Y. Oct. 26, 2018); "a clear and present danger to the fair and efficient administration of justice," *Mondragon v. Nosrak LLC*, No. 19-CV-1437 (CMA) (NRN), 2020 WL 2395641, at *1, *13 (D. Colo. May 11, 2020); a "legal lamprey[ ]," *Ward v. Consequence Holdings, Inc*., No. 18-CV-1734 (NJR), 2020 WL 2219070, at *4 (S.D. Ill. May 7, 2020); and an "example of the worst kind of lawyering," *id*. at *3. In scores of cases, he has been repeatedly chastised, warned, ordered to complete ethics courses, fined, and even referred to the Grievance Committee. And but for his penchant for voluntarily dismissing

Stross was told about the settlement, he repudiated it to both Liebowitz and the lawyer who replaced Liebowitz. After discharging those lawyers, and within thirty days of learning about the settlement, Stross retained the undersigned counsel who immediately contacted counsel for defendant and advised counsel that the settlement was without authority from Stross and that Stross repudiated the settlement.

Stross timely repudiated the unauthorized settlement agreement negotiated by his former counsel without Stross' authority. Filed herewith are the declarations of the plaintiff ("Stross Decl.") and undersigned counsel ("Rothman Decl."). These declarations confirm that Stross did not learn that a settlement was reached without his authorization until July 20, 2020. Upon learning, Stross repudiated it, terminated former counsel, and within thirty days retained the undersigned. As soon as the undersigned appeared for Stross, he advised the defendant that the settlement was without Stross' authority, unenforceable, and repudiated.

An attorney cannot settle a claim unless the client expressly authorizes him to do so. See *Cross v. Dist. Court*, 643 P.2d 39, 41 (Colo.1982) (en banc) ("[A]s we have stated on numerous occasions, an attorney does not have the authority to compromise and settle the claim of his client without the knowledge or consent of his client.") A client is not bound by a settlement agreement made by an attorney when the lawyer has not been granted either express or implied authority. *Radosevich v. Pegues*, 133 Colo. 148, 152, 292 P.2d 741, 743 (1956).

---

    cases upon getting into hot water, the list of cases detailing his misconduct — set forth in an Appendix here — would undoubtedly be longer.

*Usherson v. Bandshell Artist Mgmt.,* No. 19-CV-6368 (JMF), 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020) (filed at ECF # 56).

As the *Usherson* decision reveals, Liebowitz has been sanctioned numerous times by district courts. See *Usherson,* and cases cited therein, including *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 2992043, at *1 (S.D.N.Y. July 9, 2019). Liebowitz's behavior has also subjected his clients to sanction. See *Craig v. PopMatters Media, Inc.*, 448 F. Supp. 3d 844 (N.D. Ill. 2020).

There is no presumption of an attorney's authority to settle claims in Colorado. *358 Liberation LLC v. Country Mut. Ins. Co.*, No. 15-CV-01758-RM-STV, 2018 WL 1101671, at *2 fn. 1 (D. Colo. Mar. 1, 2018) (observing that "there is no such presumption under Colorado law" and explaining that any inference to the contrary based upon *Shoels v. Klebold*, 375 F.3d 1054 (10th Cir. 2004) is mistaken).

When a client discovers that an attorney has settled his or her claim without authority, the client must timely repudiate or ratify. *Siener v. Zeff*, 194 P.3d 467, 471 (Colo. App. 2008).

Here, Stross first learned of the unauthorized settlement of his claim without his authority on July 20, 2020. (Stross Decl. ¶ 13). He learned of the settlement from counsel who entered his appearance before Mr. Liebowitz withdrew, Craig Sanders, Esq. (Stross Decl. ¶ 13). Stross immediately advised Mr. Sanders by email that the amount of money recited in the settlement agreement was an amount that Stross never authorized and would never have agreed to in order to settle this case. (Stross Decl. ¶ 13). Stross also told Mr. Liebowitz that the settlement was unauthorized, that Stross had not given any authority for the settlement, and that he did not agree to it. (Stross Decl. ¶ 14).

Stross engaged the undersigned as counsel fewer than thirty days later. (Stross Decl. ¶ 18). Counsel appeared on August 18, 2020. (ECF # 58 ). The day before counsel for the defendant, Elise Aiken, Esq., and the undersigned exchanged emails. (Rothman Decl. ¶ 13, Ex. 1). In counsel's email of August 17, 2020, he advised Ms. Aiken that "[m]y client cannot sign the settlement agreement and that is what I need to speak to you about on Wednesday so I can explain what is going on."

On August 19, 2020, counsel for Stross spoke with Ms. Aiken at length and advised her that Stross repudiated the settlement. (Rothman Decl. ¶ 14). In the call, counsel told Ms. Aiken

that Mr. Liebowitz and Mr. Sanders never had settlement authority from Mr. Stross, that the infringement at issue was of seven images not only two as indicated in the settlement agreement and amended complaint, and that Mr. Stross repudiated the settlement as obtained without his authority. (Rothman Decl. ¶ 14).

The settlement in this case was repudiated within **thirty days** of Stross being informed that the case was settled without his authorization based upon two images not the seven that the defendant infringed. Stross immediately communicated his repudiation to his lawyers upon learning of the unauthorized settlement they had negotiated without his consent. He terminated those lawyers and then hired a new lawyer within the next thirty days. His new lawyer immediately communicated his repudiation of the settlement to opposing counsel, something that apparently Stross' previous lawyers failed to do.

Stross' repudiation was timely and the settlement was never ratified. Yet the defendants argue that Stross should have repudiated the settlement sooner. But Stross did not know about the settlement sooner. He could not reject something he was unaware of until he was aware. Once he was aware of the settlement, he rejected it.

Defendant argues that the fact that Stross' lawyers agreed to the settlement and did not repudiate it should bind Stross. However, this is contrary to Colorado law under which "the 'apparent authority' principles of agency law do not apply: the counterparty cannot rely on the disputing party's attorney's representation of authority to bind the client." *Mitchell v. Howard,* No. 14-CV-1068-WYD-NYW, 2016 WL 11383980, at *6 (D. Colo. Jan. 25, 2016), report and recommendation adopted, No. 14-CV-01068-WYD-NYW, 2016 WL 1039911 (D. Colo. Mar. 16, 2016), quoting *Lucier v. Midland Credit Mgmt., Inc.*, No. 14-CV-00847-WJM-MJW, 2014

WL 4947317, at *2 (D. Colo. Oct. 2, 2014), report and recommendation adopted, No. 14-CV-0847-WJM-MJW, 2014 WL 5784695 (D. Colo. Nov. 5, 2014).

Here, the settlement, once communicated to Stross, was repudiated, and within thirty days, as soon as Stross had new counsel, defendant was advised of Stross' repudiation. Under these facts, no settlement occurred nor can one be enforced against Stross.

Dated:  November 3, 2020                         Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Alexander Stross*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on November 3, 2020, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

*/s/Joel B. Rothman*
JOEL B. ROTHMAN

**SERVICE LIST**

Mr. Howard O. Bernstein
Ms. Amber J. Reed
Howard O. Bernstein P.C.
1111 Pearl Street, Suite 203
Boulder, CO  80302
howard@bernsteinattorney.com
amber@bernsteinattorney.com

Attorneys for Premium Source Inc.